## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES CLENDENNY**<br>**4518 Jennifer Lane**<br>**Haymarket, Virginia 20169**<br><br>**and**<br><br>**MARK INGRAM**<br>**18724 Croom Road**<br>**Brandywine MD 20613**<br>Plaintiffs<br><br>v.<br><br>**THE ARCHITECT OF THE CAPITOL**<br>**c/o General Counsel**<br>**Ford House Office Building H2-265A**<br>**Second and D Streets SW**<br>**Washington, DC 20515**<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **JURY DEMAND INCLUDED** |

## COMPLAINT

Plaintiffs bring suit against the Architect of the Capitol because their supervisors retaliated against them after they objected to using inadequate equipment to remove asbestos from the office of Representative John Conyers, among others, in the Rayburn House Office Building.  As a result of Plaintiffs' objections, they were removed from their night shift posts, they not longer perform asbestos removal work, and they are no longer entitled to increased nighttime differential pay.

### JURISDICTION

1.  Plaintiffs invoke the jurisdiction of this Court pursuant to the Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

2.      This is an action authorized and instituted pursuant to the Congressional

        Accountability Act, (2 U.S.C. § 1301 *et seq*.).

3.      The unlawful employment practices alleged in this Complaint were committed in the

        District of Columbia.

4.      The Plaintiffs are current employees in the House Office Buildings jurisdiction of the

        Architect of the Capitol.

5.      The Defendant Architect of the Capitol (AOC) is a United States Congressional

        Agency located in the District of Columbia.

6.      The Congressional Accountability Act requires the Architect of the Capitol to

        "comply with the provisions of section 5 of the Occupational Safety and Health Act

        of 1970 (29 U.S.C. 654)."  2 U.S.C. § 1341(a)(1).

7.      29 U.S.C. § 654(a), in turn, mandates that each employer "furnish to each of his

        employees employment and a place of employment which are free from recognized

        hazards that are causing or are likely to cause death or serious physical harm to his

        employees; [and to] comply with occupational safety and health standards

        promulgated under this Act."

8.      The Congressional Accountability Act makes it unlawful for the Architect of the

        Capitol to "intimidate, take reprisal against, or otherwise discriminate against, any

        covered employee because the covered employee has opposed any practice made

        unlawful by [the] Act."

9.      Plaintiffs have satisfied all administrative and judicial prerequisites to the institution

        of this action. The Plaintiffs filed timely Requests for Counseling before the Office of

        Compliance raising the violations of the Congressional Accountability Act

complained of here.  The Counseling Period began on or about September 13, 2013 and ended on or about November 1, 2013. The Plaintiffs participated in the Office of Compliance Mediation sessions, which occurred during the Mediation Period, which spanned from November 5, 2013 to December 5, 2013. Plaintiffs file this Complaint after the expiration of 30 days, and before the expiration of 90-days, following the receipt of the notices of the termination of the Mediation Period.

## FACTS

10.     Plaintiffs are both Wage Grade scale Grade 10, Step 5, Insulators for the Architect of the Capitol.

11.     Prior to August 14, 2013, Plaintiff's regular duty hours were between 3:30am and 12:00pm.  Working this shift entitled the Plaintiffs to a 10% increase in pay, known as the nighttime differential.

12.     Among Plaintiffs' primary responsibilities was to remove asbestos containing materials from House Office Buildings.  This work was typically performed late at night in order to avoid the risk of exposure to the public, Members of the House of Representatives, and their staff and employees.

13.     Asbestos Containing Materials are commonly found in the U.S. House of Representatives Office Buildings, including the Rayburn House Office Buildings.

14.     Training for asbestos professionals is required under the Environmental Protection Agency's Asbestos Model Accreditation Plan (MAP) which EPA issued under the Asbestos Hazard Emergency Response Act of 1986 (AHERA), 15 U.S.C. 1641, *et seq.*). The MAP requires the use of trained and accredited asbestos professionals when removing asbestos from public and commercial buildings.

15. The Occupational Safety and Health Administration of the Department of Labor has promulgated safety regulations governing the removal of Asbestos containing materials. 29 C.F.R. § 1926.1101.

16. 29 C.F.R. § 1926.1101(e)(6) requires that a "Competent Person" supervise the removal of asbestos containing materials.

17. 29 C.F.R. § 1926.1101(b) defines "Competent Person" as "one who is capable of identifying existing asbestos hazards in the workplace and selecting the appropriate control strategy for asbestos exposure, who has the authority to take prompt corrective measures to eliminate them, as specified in 29 CFR 1926.32(f); in addition, for Class I and Class II work who is specially trained in a training course which meets the criteria of EPA's Model Accreditation Plan (40 CFR part 763) for supervisor, or its equivalent."

18. A Competent Person's duties, defined in 29 C.F.R. § 1926.1101(o), include the responsibility to:

    a. Set up the regulated area, enclosure, or other containment;

    b. Ensure (by on-site inspection) the integrity of the enclosure or containment;

    c. Set up procedures to control entry to and exit from the enclosure and/or area;

    d. Supervise all employee exposure monitoring required by this section and ensure that it is conducted as required by paragraph (f) of this section;

    e. Ensure that employees working within the enclosure and/or using glove bags wear respirators and protective clothing as required by paragraphs (h) and (i) of this section;

    f. Ensure through on-site supervision, that employees set up, use and remove

engineering controls, use work practices and personal protective equipment in compliance with all requirements;

g.  Ensure that employees use the hygiene facilities and observe the decontamination procedures specified in paragraph (j) of this section;

h.  Ensure that through on-site inspection, engineering controls are functioning properly and employees are using proper work practices; and,

i.  Ensure that notification requirement in paragraph (k) of this section are met.

19. 29 C.F.R. § 1926.1101(g)(1) establishes engineering controls and work practices governing asbestos removal operations. Among these controls and practices is a mandate to use "vacuum cleaners equipped with HEPA filters to collect all debris and dust containing [asbestos containing materials]," and the requirement to use "wet methods or wetting agents, to control employee exposures during asbestos ... removal … and clean up" under limited exceptions. 29 C.F.R. § 1926.1101(g)(1)(ii).

20. 29 C.F.R. § 1926.1101(g)(5) requires the use of control methods, including the use of glove bag systems to contain asbestos and aid in its disposal.

21. Prior to August 14, 2013, Plaintiffs' primary duties involved removing asbestos from the House of Representative Office Buildings, including the Rayburn House Office Building.  These were duties that the Plaintiffs performed well for numerous years without incident.

22. Plaintiff Charles Clendenny was a "Competent Person" for asbestos removal performed by the Architect of the Capitol and is licensed to perform asbestos removal work.

23. At a meeting on or about August 6, 2013, Plaintiffs informed the Insulator Leader,

Darrell Williams, that new vacuum cleaners that the AOC had ordered for asbestos removal were not designed to be used under wet method asbestos removal procedures and that no asbestos removal could proceed until the appropriate vacuums were procured.

24.     As a result of the meeting on August 6, 2013, the AOC ordered new vacuums that were supposed to be capable of performing under wet method conditions.

25.     On or about August 8, 2013, Plaintiffs were called to a meeting with: (a) Greg Green, the General Supervisor of the Building Engineer Division of the AOC's House Office Buildings Jurisdiction; (b) Brian Bradley, the Supervisor of the Maintenance Mechanic and Insulation Shop; (c) Daniel Murphy, the Assistant Superintendent for Facility Operations; and two other unknown persons.  At this meeting, Mr. Green, Mr. Bradley and Mr. Murphy pressured Plaintiffs to use the available "dry" vacuum.

26.     At the meeting, Greg Green pressured the Plaintiffs to use the dry vacuum because the risk of any problems was low. He urged that the vacuum would only be needed for a few seconds and could be trashed after the work was performed.  The pressure on Plaintiffs was such that – during the meeting – Plaintiff Mark Ingram agreed to do the work without the appropriate vacuum.

27.     Plaintiff Clendenny did not agree however, and after the meeting, Mr. Clendenny – who is the "Competent Person" – explained to Mr. Ingram the risks to both their safety and the safety to Representative Conyers and his staff.

28.     Mr. Ingram telephoned Mr. Bradley on the evening of August 8, 2013; he advised Mr. Bradley that he had reconsidered and could not perform the work without a wet-method capable vacuum cleaner.

29.   New vacuum cleaners were delivered on or about August 13, 2013.   Plaintiffs inspected the vacuums and determined that they were not appropriate for use under wet-method conditions.   That same day, Plaintiffs informed Mr. Williams that they could not proceed with any asbestos removal without the appropriate vacuum.

30.   On August 14, 2013 the Plaintiffs were issued a memorandum, which announced that their duty hours would be changed from Monday-Friday, between 3:30am and 12:00 pm, to Sunday –Thursday, 6:00 am to 2:30pm.

31.   The change went into effect on September 22, 2013.

32.   Plaintiffs were the only insulators whose duty hours were changed.

33.   As a result of the change, Plaintiffs were no longer assigned to perform asbestos removal, and they no longer received the 10% additional nighttime differential.

34.   Additionally, following the issuance of the August 14, 2013 memorandum, Plaintiffs were no longer offered overtime work.

35.   Additionally, following the change in shifts, Plaintiff Clendenny has been assigned to work either alone (which is dangerous) or has been required to train and work with inexperienced helpers – who have no insulation experience – only to have the helper removed from him after only a few days and replaced with another inexperienced helper, whom Mr. Clendenny is required to train anew.   This has resulted in challenging work conditions, which are not conducive to quality work.

36.   Defendant's retaliatory conduct is ongoing in nature.

## COUNT I: RETALIATION FOR SAFETY COMPLAINTS

37.   Plaintiffs repeat and reaver each of the foregoing paragraphs as if they were specifically restated here.

38.     The Architect of the Capitol violated the Congressional Accountability Act, including but not limited to 2 U.S.C. § 1317 when it: (1) removed Plaintiffs from their regular shifts and deprived them of the concomitant increased nighttime differential pay; and (2) deprived them of overtime opportunities because they objected to be being required to work under hazardous conditions involving the risk of exposing themselves and the public to asbestos containing materials.

39.     As a result of the AOC's unlawful conduct, Plaintiffs have suffered substantial economic damages, in the form of lost income.

40.     As a result of the AOC's unlawful conduct, Plaintiffs have suffered emotional pain and suffering, fear, embarrassment, humiliation, inconvenience and feelings of depression and feelings of anxiety.

WHEREFORE, Plaintiff prays that this Court: (i) declare that the employment practices complained of in this Complaint are unlawful in that they violate the Congressional Accountability Act; (ii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the Defendant to make the Plaintiffs whole by paying Plaintiffs any monetary damages proved at trial in addition to compensatory damages in an amount to be determined at trial; (iv) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (v) order the Defendant to pay Plaintiffs' costs and expenses and reasonable attorneys' fees in connection with this action; and (vi) grant such other and further relief to the Plaintiffs as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully Submitted,
ALDERMAN, DEVORSETZ & HORA, PLLC


Leslie D. Alderman III (D.C. # 477750)
1025 Connecticut Ave., NW
Suite 615
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
lalderman@adhlawfirm.com
Attorney for the Plaintiff